JSG

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Arlander Keys | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 01 C 3040 | **DATE** | 8/13/2002 |
| **CASE TITLE** | Linda Gulo vs. Jo Anne Barnhart | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
      ☐ FRCP4(m)   ☐ Local Rule 41.1   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Memorandum Opinion and Order entered. Plaintiff's Motion for Summary Judgment [#12] is granted in part; the Commissioner's Cross-motion for Summary Judgment [#19] is denied; the case is remanded to the Commissioner for further proceedings consistent with this Opinion.

(11) ■ [For further detail see order attached to the original minute order.]

| | | |
|---|---|---|
| | No notices required, advised in open court. | |
| | No notices required. | |
| ✓ | Notices mailed by judge's staff. | |
| | Notified counsel by telephone. | |
| | Docketing to mail notices. | |
| ✓ | Mail AO 450 form. | |
| | Copy to judge/magistrate judge. | |

2
number of notices

AUG 1 4 2002
date docketed

docketing deputy initials

8/13/2002
date mailed notice

FT
mailing deputy initials

Document Number

Q2

FT/
courtroom deputy's initials

U.S. DISTRICT COURT
CLERK
02 AUG 13 PH 3: 45

Date/time received in central Clerk's Office

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

AUG 1 4 2002

LINDA GULO,                          )
                                     )
              Plaintiff,             )      Case No. 01 C 3040
                                     )
vs.                                  )
                                     )      Magistrate Judge Keys
JO ANNE B. BARNHART[1],              )
COMMISSIONER OF SOCIAL SECURITY      )
                                     )
              Defendant.             )

### MEMORANDUM OPINION AND ORDER

Plaintiff, Linda Gulo moves this Court for summary judgment,
pursuant to Rule 56(a) of the Federal Rules of Civil Procedure,
reversing the final decision of the Commissioner of Social
Security ("Commissioner"), which denied her application for
Social Security Disability Insurance Benefits under the Social
Security Act. See 42 U.S.C. §§ 405(g), 1383(c)(3) (West 2002).
In the alternative, Plaintiff requests that this Court reverse
the decision of the Commissioner and remand for further
proceedings. The Commissioner has filed a Cross-Motion for
Summary Judgment. For the reasons set forth below, the Court
grants Plaintiff's Motion in part and remands this matter for
further proceedings consistent with this Opinion. The
Commissioner's Motion is denied.

---

[1] On November 9, 2001, Jo Anne B. Barnhart became the
Commissioner of Social Security. Barnhart is automatically
substituted for Larry Massanari as the Defendant in this action.
Fed. R. Civ. P. 25 (d)(1); 42 U.S.C. § 405(g) (2002).

## PROCEDURAL HISTORY

On April 15, 1994, Plaintiff applied for Disability
Insurance Benefits ("DIB"), alleging that she became disabled and
has been unable to work since September 16, 1988, due to
tendinitis in both hands, leakage in her ears, back pain, pain in
her left leg, and fungus under the nails of both hands.  (R. at
73-75, 78.)  Plaintiff's application was denied initially on July
5, 1994, and again upon reconsideration on September 21, 1994.
(R. at 78-81, 86-88.)

On October 18, 1994, Plaintiff requested a hearing before an
Administrative Law Judge ("ALJ").  (R. at 89.)  The hearing took
place on September 12, 1995 before ALJ Maren Dougherty.[2]  On
December 29, 1995, ALJ Dougherty issued a decision finding that
Plaintiff was not disabled at any time through December 31, 1994,
the date that she last met the disability insured status
requirements.  (R. at 13-20.)  In her decision, ALJ Dougherty
determined that Plaintiff's Residual Functional Capacity ("RFC")

---

[2]    There is a discrepancy in the record.  The record
indicates that the hearing on September 12, 1995 took place
before ALJ Joyce Joy.  (R. at 32, 72.)  Defendant refers to the
hearing as before ALJ Joyce Joy.  (Def. Mot. Summ. J. at 1.)
However, Plaintiff refers to the hearing as before ALJ Maren
Dougherty.  (Pl. Mot. Summ. J. at 1.)  The notification letter
for the hearing from November 3, 1994 and the decision of the ALJ
signed on December 29, 1995 were both from Maren Dougherty.  (R.
at 30-31, 13-20.)  For the sake of clarity, the Court will refer
only to ALJ Dougherty.

2

included a "limitation to lifting no more than 20 pounds
occasionally or ten pounds frequently, a sit/stand option so that
she can change position every hour, no repetitive fingering, no
overhead reaching, and the ability to episodically during the
course of the day remove her hearing aid, functionally making her
deaf during those periods." (R. at 18.); 20 C.F.R. § 404.1545-46
(2001). The ALJ determined that Mr. Ghehrig, the Vocational
Expert ("VE"), identified jobs that Plaintiff could perform with
that RFC. (R. at 18.)

Plaintiff filed a request for review of the ALJ's decision
on January 16, 1996. (R. at 10.) The Appeals Council denied her
request on July 14, 1997, making the ALJ's decision the final
decision of the Commissioner. (R. at 4-5.)

Plaintiff sought review of the Commissioners decision in the
District Court, and Judge Denlow affirmed the ALJ's decision on
June 12, 1998. *Gulo v. Apfel*, No. 97 C 6239, 1998 WL 321457
(N.D. Ill. June 12, 1998). Plaintiff appealed that decision to
the Seventh Circuit Court of Appeals ("Seventh Circuit"). In an
unpublished opinion issued on March 1, 1999, the Seventh Circuit
affirmed the decision of the ALJ in all respects, except for an
issue relating to the repetitive fingering limitation in the RFC.
*Gulo v. Apfel*, No. 98-2982, 1999 WL 133084 (7th Cir. March 1,
1999). The Seventh Circuit remanded the case to the ALJ to
"clarify whether [Plaintiff's] fingering limitation affected one

3

hand or both and, if both hands are severely disabled, to consider whether benefits should be awarded." *Id* at *5.

On September 7, 2000, ALJ Dougherty conducted another hearing to clarify the issue, and on October 27, 2000, ALJ Dougherty issued her second opinion, again finding that Plaintiff was not disabled at anytime through December 31, 1994. (R. at 295-320.) ALJ Dougherty adjusted her RFC determination to include the limitation that Plaintiff cannot "perform constant, repetitive fingering with either hand." (R. at 297.) The Appeals Council affirmed the ALJ's decision, making the ALJ's second decision, issued on October 27, 2000, the final decision of the Commissioner. (R. at 284-286.)

## BACKGROUND

The evidence before the ALJ, at the September 12, 1995 hearing, included testimony from Plaintiff and VE Ghehrig, and medical records. Subsequent to the ALJ's December 29, 1995 decision, but before consideration by the Appeals Council, Plaintiff submitted a letter from VE Grzesik that was added to the record. On remand from the Seventh Circuit, ALJ Dougherty conducted a second hearing on September 7, 2000 and obtained additional testimony from Plaintiff and from VE Mendrick.

## A. Testimony

### 1. Plaintiff

During the first hearing on September 12, 1995, Plaintiff testified that she was 51 years old at the time of the hearing that she had received a high school education in Palestine. (R. at 37.) She can speak and read English. (R. at 37.) She testified that she wears hearing aids in both ears, but explained that she must remove them after only one half hour, due to leakage caused by infections. (R. at 38-39.) When she removes the aids, she must leave them out for at least an hour. (R. at 38.) Without her hearing aids, Plaintiff is partially deaf in her left ear, and completely deaf in her right ear. (R. at 39.) She has problems with dizziness, which affects her driving. (R. at 58).

Plaintiff complained that she has debilitating pain in both hands. (R. at 40.) She said that the skin on her hands cracks and bleeds, that she suffers from arthritis, and that she has a painful fungus under her finger nails. (R. at 40-41, 45-46.) She uses Vaseline and an ointment from a doctor to treat the cracking skin, which has plagued her for 28 years. (R. at 41-42, 50.) She explained that she has had the fungus for seven and a half years, and that the pain is growing progressively worse. (R. at 49.)

Plaintiff explained that arthritic pain also afflicts her

shoulders, arms, and back. The pain can last for days or even weeks, and frequently extends down her back into her left leg. (R. at 43, 54-55.) She has received shots in her back for the pain. (R. at 44.)

Plaintiff also experiences pain in her feet, which limits her ability to walk to no more than ten minutes at a stretch, and affects her ability to stand and sit. (R. at 44-45.) The pain in her legs prevents her from standing or sitting down for extended periods, and the pain in her back affects her sleeping. (R. at 44-45, 60.) The doctor has given her Naprosyn and Anaprox for the pain. (R. at 61).

In describing her typical day, Plaintiff explained that she watches TV and reads books. (R. at 46.) Either her husband's daughter cooks for her and her husband, or they simply eat frozen dinners. (R. at 47.) Her husband does most of the grocery shopping, although Plaintiff does accompany him at times. (R. at 47.) Her husband's daughter comes to their home to clean two or three times per week. (R. at 59.)

During the second hearing on September 7, 2000, Plaintiff testified briefly, only to clarify to VE Mendrick her duties during her last job. (R. at 309.) She stated that, in her former job, she held screws while an automated screw driver machine would crush the screws. (R. at 311.) Plaintiff claimed that this work caused her fingers to swell, inflicting a great

deal of pain.  (R. at 40.)

### 2. Ronald Ghehrig – Vocational Expert

Ronald Ghehrig testified as the VE during Plaintiff's first hearing, on September 12, 1995.  (R. at 63-71.)  VE Ghehrig testified that Plaintiff's past work was unskilled, with the exertional level being medium to sedentary work, but most of it being light work.  (R. at 64).

The ALJ proposed a hypothetical to VE Ghehrig, describing a person of the same age, education, and work experience as Plaintiff.  (R. at 65.)  The hypothetical further assumed that the person could lift 20 pounds occasionally and ten pounds frequently; could sit, stand, or walk for six hours during an eight hour day; was unable to do repetitive fingering with her dominant right hand; and must work in a quiet environment due to her hearing problems.  (R. at 65.)  VE Ghehrig testified that the hypothetical person could work as a cashier, receptionist, order clerk, file clerk, record clerk or assembler, and that the number of these jobs in the Chicago area totaled more than 50,000.  (R. at 65.)

Next, the ALJ added a sit/stand option, and assumed that the hypothetical person could not lift weights or do work above the shoulders, and could not do quick scanning.  (R. at 66-67.)  VE Ghehrig testified that these additional requirements would eliminate the cashier positions and fractions of the other

7

positions, but that the hypothetical person would still be able to perform many jobs. (R. at 68.)

Finally, the ALJ added that the hypothetical person "can't use their fingers such as [Plaintiff] described, having such pain as she can't touch things." (R. at 68.) VE Ghehrig testified that this would eliminate all of the jobs that he had mentioned. (R. at 68.)

Plaintiff's attorney then asked VE Ghehrig if his answer to the ALJ's first hypothetical would change if the individual described also experienced dizziness. VE Ghehrig opined that dizziness would eliminate some jobs, but he couldn't say exactly how many. (R. at 70.) Plaintiff's attorney then asked if the remaining jobs would be eliminated by a "lack of good hand and finger dexterity and coordination." (R. at 71.) VE Ghehrig testified that such a restriction would "absolutely" eliminate the remaining jobs. (R. at 71.)

### 3. Frank Mendrick - Vocational Expert

Frank Mendrick testified as a VE during Plaintiff's second hearing, on September 7, 2000. (R. at 307-320.) VE Mendrick classified Plaintiff's past work as unskilled and light work. (R. at 312.)

The ALJ proposed a hypothetical person resembling Plaintiff to VE Mendrick, who could lift up to twenty pounds occasionally, and ten pounds frequently; who could not perform overhead

8

reaching with either arm, and must work be permitted to change positions from sitting to standing and vice versa every hour; who could not perform repetitive fingering with the right dominant hand; and who must be allowed to periodically remove her hearing aid during the day, making her functionally deaf during those periods. (R. at 312.) VE Mendrick testified that this hypothetical person could perform work as a cashier, mail clerk, and hand packer with thousands of jobs in the Chicago area. (R. at 312-313.)

The ALJ added that the hypothetical person could not do repetitive fingering with either hand, and VE Mendrick testified that that would reduce the number of cashier jobs, but nothing else. (R. at 313.) The ALJ added that the hypothetical person could not perform repetitive forceful gripping first with only the left non-dominant hand, and then with both hands. (R. at 313.) VE Mendrick testified that the first would reduce the total hand packing jobs to about 3,000, and that the person with both hands unable to perform repetitive forceful gripping would only be able to perform about 500 jobs. (R. at 313-14.)

Plaintiff's attorney questioned VE Mendrick about the meaning of the fingering limitation in relation to the mail clerk positions. (R. at 314-15.) VE Mendrick testified that the Dictionary of Occupational Titles ("DOT") does not use the term "repetitive." (R. at 315.) The DOT uses "constant," "frequent,"

and "occasional." (R. at 315.) VE Mendrick testified that, to
him, "repetitive" is the same as "constant," and "frequent" is
less than "repetitive." (R. at 315.) Based on questioning from
Plaintiff's attorney, VE Mendrick testified that, if that
hypothetical person were incapable of "frequent" fingering, then
the person would be unable to work as a mail clerk. (R. at 315.)
He also added that, if a person were incapable of "frequent" use
of both hands, then that person could not perform the cashier or
hand packer jobs either, which would eliminate all of the
positions. (R. at 316.)

### 4. Thomas Grzesik - Vocational Expert

Thomas Grzesik did not testify directly before either ALJ,
but he did offer his professional opinion regarding Plaintiff's
employability in the form of a letter to Plaintiff's Attorney.
(R. at 278-283.) In a letter written on December 10, 1996, VE
Grzesik responded to the September 12, 1995 hearing, and to ALJ
Dougherty's December 29, 1995 decision. (R. at 278.)

VE Grzesik based his assessment of Plaintiff's RFC on the
description given by ALJ Dougherty in her December 29, 1995
decision. VE Grzesik rejected VE Ghehrig's professional opinion,
that Plaintiff could perform over 9,000 assembler and
inspector/checker jobs in the Chicago area, as having "no basis
in fact, logic or even common sense." (R. at 279.) VE Grzesik
stated that, despite his substantial experience, he is unaware of

any unskilled light assembler or inspector/checker jobs that do not require repetitive fingering. (R. at 279.) He added that, because Plaintiff must periodically remove her hearing aids, which makes Plaintiff functionally deaf, she is incapable of performing virtually all service, sales, and clerical related occupations that are unskilled with a sit/stand option. (R. at 280, 282.) The remaining unskilled work positions are production positions and were unavailable to Plaintiff because of her repetitive fingering restriction. (R. at 280, 282.) In conclusion, VE Grzesik stated that, based upon the hypothetical set forth by the ALJ, "it is my opinion as a VE that [Plaintiff] would be unable to perform any occupation that she would otherwise be qualified to perform," because of Plaintiff's hearing problems and inability to perform repetitive fingering. (R. at 283.)

## B. Medical Records

The record contains reports from numerous physicians, from whom the Plaintiff sought treatment on only one or two occasions. For the purpose of clarity, the Court will examine the reports as they relate to Plaintiff's primary ailments: hearing loss, obesity, and hand and back pain. The section on hand and back pain, which involves more in depth treatment, will discuss the treatment provided by each physician.

### 1. Hearing Loss-Dr. Miller and Dr. Daou

In 1971, Plaintiff was diagnosed with bilateral moderate mixed hearing loss. (R. at 129.) In 1973 and 1974, she underwent surgery on her right ear for otoscelerosis, which was performed by Dr. Weingarten. (R. at 125-126, 137.) In 1988, Dr. Miller diagnosed Gulo with vertigo related to chronic otitis media. (R. at 141.)

In 1994, Dr. Daou, an adult otologist, diagnosed Plaintiff with severe to profound mixed hearing loss, and noted that she needs hearing aids. (R. at 185, 188.) Dr. Daou further explained, however, that she cannot wear hearing aids continually due to secondary ear infections. Dr. Daou noted that Plaintiff has recurrent drainage in her better-hearing left ear due to a tympanic membrane perforation. (R. at 185.)

### 2. Obesity-Dr. Pierson and Dr. Artinian

Plaintiff also has noted problems with obesity. (R. at 145, 160, 164, 192, 202, 204, 220, 231, 354.) In 1988, Dr. Pierson described Plaintiff as a woman with a medical history significant for obesity. (R. at 145.) On several occasions, Dr. Artinian recommended weight loss and exercise to Plaintiff. (R. at 202, 204, 231.)

### 3. Hand and Back Pain

### a. Dr. Schenck, Dr. Pierson, and Dr. Casini

Plaintiff first complained of left-hand weakness and pain in

her forearm, which radiated to her shoulder, to Dr. Schenck on September 30, 1988. (R. at 138.) Dr. Schenck, a specialist in hand surgery, believed that she had tendonitis and not carpal tunnel syndrome. (R. at 139.)

Dr. Pierson, of University Orthopaedics, examined Plaintiff in June of 1988 and April of 1989. (R. 142, 145) Dr. Pierson found that she presented "a rather unusual pattern of complaints and findings." (R. at 142-144.) X-Rays revealed anterior osteophytes at the C4-5 and C5-6 articulations. (R. At 143.) Dr. Pierson determined that her symptoms were primarily due to chronic medial epicondylitis and recommended a prophylactic muscle rehabilitation program. (R. at 146.)

In June of 1989, Plaintiff was examined by Dr. Casini, an orthopaedic surgeon, also from University Orthopaedics. (R. at 147.) Plaintiff reported tingling, radiating pain, and weakness in her hands. *Id.* Based on an examination and X-Rays, Dr. Casini found no objective evidence to support Plaintiff's subjective complaints of hand pain. (R. at 148.) Spinal X-Rays demonstrated osteophytes anterior at the C5-6 and C6-7 articulations, but the X-Rays taken of her wrists were unremarkable. *Id.*

### b. Dr. Barnett

In July 1992, Plaintiff was examined by Dr. Barnett. (R. at 149-151.) Plaintiff again complained of pain and numbness in

both of her hands and wrists.  (R. at 149.)  In his objective findings, Dr. Barnett concluded that Plaintiff had restricted wrist motion, numbness in all fingers of both hands, diminished sensation in the palmar aspect of all fingers in the left hand, positive Phalen sign bilaterally, positive Tinel sign on the left hand and slightly positive on the right hand, weakness in both hands, atrophy of the left forearm, and the inability to fully flex her fingers into her palms.  (R. at 150.)  X-Rays showed a small loose bone fragment at the base of the left 1st metacarpal, arthritic sclerosis at the carpal articulations, and arthritic sclerosis and osteophyte formation in the joints of both thumbs and the distal joint of the right index finger.  (R. at 151.)  Dr. Barnett stated that the symptoms and findings suggested carpal tunnel syndrome in both hands and wrist areas.  (R. at 150-51.)  Dr. Barnett opined that Plaintiff had "moderate loss of use of both hands on an industrial basis."  (R. at 151.)

### c. Dr. Kale

In June 1992 and August 1993, Plaintiff was examined by Dr. Kale, who worked in an arthritic and internal medicine specialist office.  (R. at 152.)  He found her range of motions for her back, shoulders, elbows, wrists, and fingers to be normal.  (R. at 158.)  He stated that her fingers appeared slightly swollen and that she conducts finger motions slowly and carefully.  (R. at 158.)  He also stated that she has bilateral, lateral, and

14

medial epicondylitis. (R. at 158.) He concluded that Plaintiff's complaints were most compatible with left carpal tunnel syndrome and possible carpal tunnel syndrome on the right and myofascial discomfort in both hands, but he added that it is unclear why she should continue having such pain. (R. at 159.) His "best fit" diagnosis at the time was chronic reflex sympathetic dystrophy ("RSD"). (R. at 159.) Dr. Kale stated that Plaintiff could not perform her current job, which required hand manipulation and strength. (R. at 159.) He reexamined Plaintiff in 1993 and found no clear etiology for her complaints, but he did state that she might suffer from RSD. (R. at 155.) He suggested a bone scan and stellate ganglion blocks to test his diagnosis, but there is no evidence in the record that these tests were ever conducted. (R. at 155.)

### d. Dr. Artinian

In May 1994, Plaintiff was examined by Dr. Artinian for her Social Security Disability Evaluation. (R. at 162.) Dr. Artinian found synovial membrane thickening of both PIP joints on both hands, a deformity of the fingers in both hands, but mostly on the left, severe pain, and stiffness in the left forearm and wrist, inability to make a fist, and limited motion in her left elbow and arm. (R. at 162.) He stated that she has had a fungus in her fingernails for the last five years and a skin disorder of both hands that causes cracking of the skin and a severe burning

pain. (R. at 162, 183.) She has been evaluated by multiple dermatologists, and they have no etiology and no way of treating her. (R. at 183.) He stated that Plaintiff has severe cervical degenerative arthritis, lumbosacral degenerative arthritis, with left sciatica syndrome, severe arthritis in fingers on both hands, which are degenerative, reflex dystrophy of the left forearm, bilateral pedal edema, bilateral deafness, with associated labyrinthitis, and severe vertigo, unresponsive to medical therapy, and an ezcematoid reaction in the ear canal, which makes her unable to use her hearing aids. (R. at 183.)

In treatment notes from July 1994, Dr. Artinian noted that Plaintiff still suffered from severe cracking of her hand from dryness, and that nothing was helping. (R. at 203.) In August and September of 1994, Plaintiff complained of left lumbar pain radiating down to her left ankle, with numbness in her thigh. (R. at 203.) He stated that she suffers from left lumbar radicular syndrome. (R. at 205.) In February 1995, Dr. Artinian diagnosed Plaintiff with right carpal tunnel syndrome. (R. at 204, 226.) Based upon her X-Rays, Dr. Artinian concluded that she has degenerative disc changes in the C4-C7 levels and that she has calcific tendonitis in her right shoulder. (R. at 204, 226, 262.)

Dr. Artinian continued treating Plaintiff through the time of the second hearing in September, 2000. (R. at 394-395.) Dr.

Artinian wrote a letter summarizing Plaintiff's condition at that time. *Id.* He stated that she had severe arthritis in her fingers, fungal infection of both fingernails, severe skin dyshydratic dermatitis, which causes severe cracking of the fingers and renders her hands useless for any gainful employment, and the RSD of the left forearm continues. *Id.*

### 3. ALJ Dougherty's December 29, 1995 Decision

ALJ Dougherty found that Plaintiff met the disability insured status requirements of the Social Security Act on her alleged onset date and through December 31, 1994. (R. at 14.) The ALJ determined that Plaintiff has not been employed since her alleged onset date of September 16, 1988. (R. at 14.); 20 C.F.R. § 404.1520(b). Next, the ALJ noted that the claimant has severe mixed hearing loss bilaterally, with recurrent drainage in the left ear, osteoarthritis in the cervical and lumbar spines, reflex sympathetic dystrophy of the hands bilaterally, calcific tendonitis of the shoulders, a history of labyrinthitis and vertigo, obesity, and xeroris of the hands. (R. at 14.)

Although the ALJ determined that these impairments are severe, as defined in the Social Security Act, the ALJ further determined that these impairments do not satisfy the requirements of any section of the Listing of Impairments, Appendix 1, Subpart P, Part 404 of the regulations, including sections 1.02, 1.04, 1.05, 2.07, 2.08, 8.02, 9.09 or 11.17, whether considered alone

17

or in combination. (R. at 14.); 20 C.F.R. ' 404.1520 (c)(d).

In determining Plaintiff's RFC, the ALJ noted that, between September 1988 and December 1994, Plaintiff was unable to lift more than 20 pounds at a time and 10 pounds frequently; she could not perform activities requiring overhead reaching; she required a job that allowed a sit/stand option so that she could change position every hour; she could not perform activities requiring repetitive fingering; and she needed to periodically remove her left hearing aid during the course of the day, even though that rendered her deaf. (R. at 14.); 20 C.F.R. §404.1545. The ALJ found that Plaintiff was unable to perform her past work. (R. at 18.); 20 C.F.R. § 404.1520(e).

Given these limitations, the ALJ found that Plaintiff was capable of performing only light work. (R. at 17.) Moreover, the ALJ determined that the Plaintiff's testimony regarding the degree of limitations she was experiencing and her inability to work on or before December 31, 1994, lacked credibility. (R. at 17.); 20 C.F.R. § 404.1529. In making this determination, the ALJ stated that the record did not support the significant limitations Plaintiff described at the hearing. (R. at 17.) The ALJ noted that there was very little objective evidence supporting Plaintiff's subjective claims. (R. at 17.) Specifically, there was very little evidence to support her claim

18

of frequent ear infections or drainage on a daily basis.[3]   (R. at 17.)   The ALJ also doubted Plaintiff's claims of dry and cracking skin on her hands, because she had not sought treatment from a dermatologist. (R. at 17.)

The ALJ acknowledged that Plaintiff does not have any skills that are transferable to other work.  (R. at 19.); 20 C.F.R. § 404.1568.  Given Plaintiff's RFC, age, skill level, and education, the ALJ stated that, according to VE Ghehrig, there were still more than 9,000 jobs that Plaintiff could perform in the Chicago area, which constitutes a significant number in the national economy.  (R. at 18.)  The ALJ further noted that Rule 202.13 of the Medical-Vocational Guidelines, Appendix 2, Subpart P, Part 404, further supports her conclusion that Plaintiff was not disabled.[4]  (R. at 18.); 20 C.F.R. § 404.1569.

The ALJ found that Plaintiff was not disabled on or before

---

[3]   The Court notes that this claim is apparently inconsistent with the ALJ's earlier finding, in describing Plaintiff's RFC, that Plaintiff needed to remove her hearing aid on a daily basis.

[4]   The Court questions the ALJ's use of the Grids in this case.  The medical evidence and findings of ALJ Dougherty indicate that Plaintiff suffers from both exertional and non-exertional limitations, including pain and hearing loss.  When the claimant suffers from both exertional and non-exertional limitations, the Grids will not be used unless there is a rule that directs a conclusion of disabled based only on strength limitations.  20 C.F.R. § 404.1569a.  There is not a rule that directs that conclusion and, therefore, the Grids are not applicable to Plaintiff's case.

her date last insured, as defined by the Social Security Act, and, therefore, denied Plaintiff's benefits. (R. at 18, 20.)

Plaintiff appealed the ALJ's decision to the Appeals Council. (R. at 10.) Prior to filing her appeal, Plaintiff submitted additional evidence and a statement from VE Grzesik, in support of her claim of disability. (R. at 278-83.) Nevertheless, the Appeals Council denied Plaintiff's appeal and the ALJ's decision stood as the final decision of the Commissioner. (R. at 4-5.) Plaintiff then appealed the Commissioner's decision to the District Court for the Northern District of Illinois, and Judge Denlow affirmed the Commissioner's decision on June 12, 1998. *Gulo*, 1998 WL 321457. Plaintiff appealed that decision to the Seventh Circuit Court of Appeals.

## 4. The Decision of the Seventh Circuit Court of Appeals

In an unpublished decision, the Seventh Circuit affirmed Judge Denlow's decision in most respects, but took issue with the ALJ's finding regarding Plaintiff's ability to perform repetitive fingering. *Gulo*, 1999 WL 133084, at *5. The Seventh Circuit remanded the case to the ALJ to clarify whether Plaintiff's fingering limitation affected one hand, or both. *Id.* at *4.

The Seventh Circuit identified three hypothetical scenarios with respect to the fingering issue, and the corresponding job availabilities as estimated by VE Ghehrig. *Id.* The Seventh

Circuit explained that, based upon the evidence in the record, if the hypothetical person can perform "repetitive fingering" with one hand, then there are over 9,000 jobs available in the Chicago area. *Id*. However, if the hypothetical person cannot touch things, then there are no jobs available. *Id*. Finally, if the hypothetical person lacks "good hand and finger dexterity," then there are likewise no jobs available. *Id*. The Seventh Circuit found that, according to VE Ghehrig's testimony, if the ALJ meant that Plaintiff could perform repetitive fingering with one hand, then there would be over 9,000 jobs available. *Id*. However, if the ALJ meant that Plaintiff could not perform repetitive fingering with either hand, the ALJ would either have to conclude that Plaintiff was in fact disabled based on the hypothetical questions asked of the VE, or gather more evidence to substantiate that Plaintiff could still work, despite being unable to perform repetitive fingering with either hand. *Id*.

The Seventh Circuit rejected Plaintiff's other arguments, and remanded the case for the ALJ to "specify whether [Plaintiff] is unable to perform repetitive fingering with only her right hand or whether she is unable to perform repetitive fingering with either hand, in which case more evidence must be taken or benefits awarded." *Id*. at *5.

**5. ALJ Dougherty's October 27, 2000 Decision**

The ALJ held a supplemental hearing on September 7, 2000, to

obtain additional testimony from VE Mendrick. (R. at 307-20.)
Plaintiff also testified briefly at the hearing. (R. at 310-
11.)

The ALJ issued an eight-page decision on October 27, 2000.
(R. at 295-303.) This opinion is almost identical to the first
opinion issued by the ALJ, except for the ALJ's discussion of
Plaintiff"s RFC. (R. at 295-303.) The ALJ explained that
Plaintiff cannot "perform constant, repetitive fingering with
either hand." (R. at 297.) Based on the RFC that included "no
repetitive fingering with either hand," the ALJ once again
mischaracterized VE Ghehrig's testimony by claiming that VE
Ghehrig identified over 9,000 jobs that Plaintiff could perform.[5]
(R. at 300.) Using Rule 202.13 of the Medical-Vocational
Guidelines, Appendix 2, Subpart P, Part 404 as a framework for
decision-making, in combination with VE Ghehrig's testimony, the
ALJ again declared that Plaintiff was not disabled. (R. at 300.)

---

[5] The ALJ did not obtain any additional testimony from VE
Ghehrig, and relied upon VE Ghehrig's original testimony in
reaching her decision, despite the Seventh Circuit's finding that
such a conclusion could not be drawn from VE Ghehrig's testimony.
VE Ghehrig testified that a person who could not perform
repetitive fingering with the *right dominant hand* would still be
able to work. The ALJ listed the restriction as *no repetitive
fingering*, but did not limit it to her right hand. Therefore,
unless the ALJ used the RFC that matched the scenario that VE
Ghehrig testified about, his testimony cannot support the ALJ's
conclusion that Plaintiff would be able to work. This is the
exact mistake that the ALJ made the first time, and she repeated
it here.

The ALJ added an additional paragraph to the opinion, discussing the "clarified" RFC and VE Mendrick's testimony. (R. at 301.) The ALJ stated that, based upon an RFC precluding Plaintiff from performing repetitive constant fingering with either hand or reaching above the shoulder with either arm, Plaintiff could still perform over 10,000 jobs in the Chicago area, based on testimony from VE Mendrick. (R. at 301.) Because this represents a significant number of jobs, Plaintiff was not considered disabled, as defined by the Social Security Act.

## STANDARD OF REVIEW

In reviewing the ALJ's decision, the Court may not decide the facts, reweigh the evidence, or substitute its own judgment for that of the ALJ. *Herron v. Shalala,* 19 F.3d 329, 333 (7th Cir. 1994). Where conflicting evidence allows reasonable minds to differ, the responsibility for determining whether a claimant is disabled falls upon the Commissioner, not the courts. *Herr v. Sullivan*, 912 F.2d 178, 181 (7th Cir. 1990); *see also Stuckey v. Sullivan*, 881 F.2d 506, 509 (7th Cir. 1989) (the ALJ has the authority to assess medical evidence and give greater weight to that which she finds more credible). Rather, the Court must accept findings of fact that are supported by "substantial evidence," 42 U.S.C. § 405(g), where substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Herron*, 19 F.3d at 333

(quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)).

The Court is limited to determining whether the Commissioner's final decision is supported by substantial evidence and based upon proper legal criteria. *Ehrhart v. Sec'y of Health and Human Servs.*, 969 F.2d 534, 538 (7th Cir. 1992). This does not mean that the ALJ is entitled to unlimited judicial deference, however. The ALJ must consider all relevant evidence and may not select and discuss only that evidence that favors her ultimate conclusion. *Herron*, 19 F.3d at 333. In addition to relying on substantial evidence, the ALJ must articulate her analysis at some minimal level. *See Young v. Sec'y of Health and Human Servs.*, 957 F.2d 386, 393 (7th Cir. 1992) (ALJ must articulate her reason for rejecting evidence "within reasonable limits" in order for meaningful appellate review). The ALJ must build "an accurate and logical bridge" from the evidence to her conclusion. *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

Finally, although Plaintiff bears the burden of demonstrating her disability, "[i]t is a basic obligation of the ALJ to develop a full and fair record." *Thompson v. Sullivan*, 933 F.2d 581, 585 (7th Cir. 1991) (*quoting Smith v. Sec'y of HEW*, 587 F.2d 857, 860 (7th Cir. 1978)). "Failure to fulfill this obligation is 'good cause' to remand for gathering additional evidence." *Smith v. Apfel*, 231 F.3d 433, 437 (7th Cir. 2000)

(finding that, if the ALJ found the evidence before him
insufficient, he should have obtained more evidence.)

### SOCIAL SECURITY REGULATIONS

The Social Security Regulations prescribe a sequential five-
part test for determining whether a claimant is disabled. *See* 20
C.F.R. §§ 404.1520 and 416.920. The ALJ must consider: (1)
whether the claimant is presently unemployed; (2) whether the
claimant has a severe impairment or combination of impairments;
(3) whether the claimant's impairment meets or equals any
impairment listed in the regulations as being so severe as to
preclude gainful activity; (4) whether the claimant is unable to
perform his past relevant work; and (5) whether the claimant is
unable to perform any other work existing in significant numbers
in the national economy. *See* 20 C.F.R. §§ 404.1520 and 416.920;
*see also Young*, 957 F.2d at 389. A finding of disability
requires an affirmative answer at either step 3 or step 5. A
negative answer at any step (other than step 3) precludes a
finding of disability. *Id*. The claimant bears the burden of
proof at steps 1-4, but the burden shifts to the Commissioner at
step 5. *Id*.

At Step 5, the ALJ evaluates the claimant's RFC to perform a
particular category of work (i.e. sedentary, light, medium,
heavy, or very heavy work), in combination with the Medical-
Vocational Guidelines ("the Grid"), to determine whether an

individual of the claimant's age, education, and work experience could engage in substantial gainful activity.  *See* 20 C.F.R. Part 404, Subpart P, Appendix 2.  The Grid is a chart that classifies a claimant as disabled or not disabled, based on the claimant's physical capacity, age, education, and work experience.  *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987).  If the use of the Grid is appropriate, the Commissioner or ALJ may rely upon it for determining disability, and, in such a case, the Grid alone constitutes substantial evidence sufficient to uphold the decision of the Commissioner.  *Id.*

However, where a plaintiff suffers from significant non-exertional impairments, the ALJ may not rely upon the Grid.  *See* SSR 83-14.  "When a plaintiff's non-exertional impairments significantly diminish his ability to work . . . the Commissioner must introduce the testimony of a vocational expert (or other similar evidence) that jobs exist in the economy which plaintiff can obtain and perform."  *Bapp v. Bowen,* 802 F.2d 601, 603 (2d Cir. 1986).

## DISCUSSION

Plaintiff contends that the ALJ's conclusion that she is not disabled is contradicted by the testimony of the Vocational Experts ("VE") and the medical evidence.  Plaintiff first argues that the ALJ erred by failing to consider and discuss the VEs' testimony and other evidence that was contrary to her decision.

Next, Plaintiff takes issue with the ALJ's failure to consider medical evidence that supported her claim that she was incapable of frequent fingering. Finally, Plaintiff argues that the ALJ erred by failing to consider her obesity in combination with her other impairments. The Court will address each argument in turn.

## 1. The ALJ erred by failing to consider and discuss testimony and evidence that was contrary to her decision.

The ALJ failed to reconcile evidence that was contrary to her ultimate decision, and to discuss relevant concessions made by the VEs during cross-examination. While the Seventh Circuit does not require a written examination by the ALJ of every piece of evidence, the ALJ must "sufficiently articulate his assessment of the evidence" to enable the reviewing court to trace the path of the ALJ's reasoning. *Rohan v. Chater*, 98 F.3d 966, 971 (7th Cir. 1996). The Seventh Circuit imposes this requirement to assure the reviewing court that the ALJ considered the important evidence. *Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996). The ALJ may not simply select evidence that favors her ultimate conclusion, but must, at a minimum, articulate her analysis of the evidence, particularly where there is considerable evidence that counters the agency's position. *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999) (The "ALJ may not ignore an entire line of evidence that is contrary to her findings.")

When the testimony of a VE is essential to the ALJ's conclusion, the ALJ must address the concessions made by the VE during cross-examination. *Conner v. Shalala*, 900 F. Supp. 994, 1003-04 (N.D. Ill. 1995). Because the ALJ failed to address concessions made by the VE's during cross-examination, and entirely disregarded the professional opinion of VE Grzesik, who opined that Plaintiff is disabled based upon the RFC listed by the ALJ, the Court finds that remand is warranted.

**a. Vocational Expert Ghehrig**

In her opinion, the ALJ found that, even though Plaintiff was incapable of repetitive fingering, she was not disabled. The ALJ purportedly based her conclusion upon VE Ghehrig's testimony. However, VE Ghehrig's testimony, viewed in its entirety, does not provide substantial evidence supporting the ALJ's conclusion.

VE Ghehrig testified that, if Plaintiff could not do repetitive fingering with her right dominant hand, then there were a significant number of jobs that Plaintiff could perform. VE Ghehrig further opined that, if Plaintiff could not "use [her] fingers such as Plaintiff described, having such pain that she can't touch things," then there were no jobs that Plaintiff could perform. During cross-examination, VE Ghehrig conceded that, if Plaintiff lacked "good hand and finger dexterity and coordination," then there were no jobs that Plaintiff could perform.

Despite her conclusion that Plaintiff was incapable of repetitive fingering, the ALJ inappropriately cited to VE Ghehrig's testimony to support her conclusion that Plaintiff was able to work and not disabled. The Seventh Circuit declared that the ALJ's conclusion was not supported by VE Ghehrig's testimony. Because the RFC that the ALJ listed did not match the hypothetical questions posed to VE Ghehrig, the Seventh Circuit remanded for further consideration.

Despite the remand, the ALJ relied upon this same testimony to support the same conclusion in her second opinion. During the hearing, VE Ghehrig explained that, if Plaintiff was unable to perform repetitive fingering with the *right dominant hand only*, then there were a significant number of jobs that Plaintiff could perform. If Plaintiff lacked *good hand and finger dexterity with both hands*, then there were no jobs that she could perform. Inexplicably, the ALJ found that the Plaintiff was unable to perform constant, repetitive fingering with both hands, but was, nevertheless, able to perform work.

Based on these limitations, VE Ghehrig's testimony contradicts the ALJ's finding that Plaintiff is not disabled. The Seventh Circuit instructed the ALJ that, if she concluded that Plaintiff was unable to perform repetitive fingering with either hand, the ALJ must either procure evidence supporting the conclusion that there are a sufficient number of jobs available

to a person with Plaintiff's limitations or award benefits. The ALJ apparently misunderstood the Seventh Circuit's instruction when she once again relied upon VE Ghehrig's testimony to support a conclusion of not disabled.[6]

### b. Vocational Expert Mendrick

The ALJ's second opinion also failed to address concessions made by VE Mendrick during cross-examination. Specifically, the opinion fails to explain why Plaintiff was able to do frequent fingering but not constant fingering. VE Mendrick testified that, if Plaintiff is able to do frequent fingering, but not constant fingering, then there were jobs available. But on cross-examination, VE Mendrick conceded that, if Plaintiff was unable to do constant or frequent fingering, then there were no jobs available. Based upon VE Mendrick's testimony, the distinction between frequent and constant significantly impacts the outcome of Plaintiff's case.

Despite the significance of this distinction, the ALJ's decision does not reveal how she arrived at the conclusion that Plaintiff could perform frequent fingering, and fails to discuss evidence that would permit her to distinguish between Plaintiff's

---

[6] Further, the ALJ must address the concession by VE Ghehrig that if Plaintiff lacked "good hand and finger dexterity and coordination," then the Plaintiff was disabled.

ability to perform frequent, but not constant fingering.[7] This
issue is potentially determinative of Plaintiff's case, and the
ALJ, at a minimum, had an obligation to articulate how, despite
the medical evidence supporting Plaintiff's claim of restricted
fingering, she concluded that Plaintiff could perform frequent,
but not constant fingering and what evidence she used to support
this determination. *Clifford*, 227 F.3d at 873 ("If the ALJ
believes that he lacks sufficient evidence to make a decision, he
must adequately develop the record and, if necessary, obtain
expert opinions.").

Plaintiff also argues that VE Mendrick made four additional
concessions during his testimony, independent of the frequent and
constant distinction. However, the Court finds that these
arguments are lacking in merit and do not warrant discussion.

---

[7] It is not even clear from the record that the distinction
between frequent and constant was properly defined and
understood. The distinction was brought up by VE Mendrick on
cross-examination by Plaintiff's attorney and was not solicited
by the ALJ. (R. at 315.) VE Mendrick clarified that the DOT
does not use the term repetitive, but rather the terms constant,
frequent, and occasional. He equaled constant with repetitive in
his testimony, but did not offer a definition of frequent other
than that it is less than constant or repetitive. Because there
is no evidence in the record that objective definitions were
used, the Court is unable to see the logic that the ALJ used in
determining that Plaintiff could perform frequent, but not
constant fingering. The DOT defines constant as an activity or
condition that occurs for 2/3 or more of the time and frequent as
an activity or condition that occurs 1/3 to 2/3 of the time.
*Dictionary of Occupational Titles, Appendix C*, (4th Ed., Rev.
1991).

## c. **Vocational Expert Grzesik**

ALJ Dougherty failed to discuss VE Grzesik's testimony, which contradicted her conclusion. VE Grzesik wrote a letter on December 10, 1996, based on the RFC set forth by ALJ Dougherty in her December 29, 1995 decision.[8] VE Grzesik stated that the requirement for Plaintiff to remove her hearing aids, which makes Plaintiff functionally deaf, would eliminate virtually all service, sales, and clerical positions that are unskilled with a sit/stand option. (R. at 280, 282.) The remaining unskilled positions are related to production, and are unavailable to Plaintiff because of the repetitive fingering restriction. Based upon these two restrictions, VE Grzesik found that there are no positions that the Plaintiff is able to perform. (R. at 283.)

Clearly, VE Grzesik's testimony supports Plaintiff's claim of disability, because he states that, even based on ALJ

---

[8] The letter was written to Plaintiff's attorney in an effort to have Plaintiff's case considered by the Appeals Council. However, when the Appeals Council declined to consider the case, the decision of ALJ Dougherty became the final decision of the Commissioner. Because the ALJ's decision was final, on appeal to the Federal District Court, Judge Denlow and the Seventh Circuit only looked at evidence that was part of the record that was before the ALJ. *Eads v. Secretary of the Department of Health and Human Services*, 983 F2d 815, 817-818 (7th Cir. 1993); *Gulo*, 1998 WL 321457. This did not include VE Grzesik's letter, because it was submitted after the ALJ's decision. However, once the case was remanded, the letter was part of the record as it was before ALJ Dougherty, and ALJ Dougherty was required to either use the opinion or explain reasons for rejecting it.

Dougherty's RFC determination, there are no positions that Plaintiff is able to perform. While the ALJ was not required to credit VE Grzesik's testimony, she was obligated to discuss this significant testimony, which contradicts her conclusion. *Henderson v. Apfel*, 179 F.3d 507, 514 (7th Cir. 1999) ("An ALJ may not ignore an entire line of evidence that is contrary to her findings."). The Seventh Circuit requires ALJs "to articulate reasons for accepting or rejecting entire lines of evidence." *Herron*, 19 F.3d at 333 (citing *Carson v. Shalala*, 999 F.2d 180, 181 (7th Cir. 1993)). On remand, the ALJ must consider VE Grzesik's letter, and, at a minimum, articulate reasons for accepting or rejecting his opinion.

**d. Medical Evidence**

The Court further finds that the ALJ failed to build a logical bridge from the relevant medical evidence to her conclusion that Plaintiff is capable of frequent but not constant fingering, and that Plaintiff is incapable of repetitive forceful gripping. While the ALJ is not required to address every piece of evidence in the record, she must explain why evidence in the record, which favors Plaintiff, was overcome by the evidence on which she relied. *Zurawski v. Halter*, 245 F.3d 881, 889 (7th Cir. 2001). The ALJ cannot simply "select and discuss only that evidence which favors his ultimate conclusion." *Clifford*, 227 F.3d at 871 (quoting *Herron*, 19 F.3d at 333). The ALJ's

explanation must take into account material evidence that would support the opposite conclusion, so that a reviewing court has some idea as to why the judge rejected it. *Id.* at 874. The ALJ may not substitute his own judgment for that of a doctor. *Rohan*, 98 F.3d at 970.

In her second opinion, ALJ Dougherty found that Plaintiff suffers from RSD of the hands bilaterally and xerosis of the hands. (R. at 296). The ALJ acknowledged that Dr. Artinian noted Plaintiff's complaints of severe pain in both hands, with morning stiffness in her fingers and fungus and cracking of the fingernails. Upon examination, Dr. Artinian noted that Plaintiff had severe pain in her left forearm and wrist, that she could not make a fist, and that she had synovial thickening of both PIP joints of both hands and deformity of the fingers. (R. at 298.) Dr. Artinian diagnosed a history of RSD, with deformity and arthritis in the fingers on both hands. (R. at 298.) The ALJ also noted that Dr. Kale examined Plaintiff for pain in her hands, which was aggravated with use. (R. at 298.) Dr. Kale noted pain in the third and fourth digits on the palmar surface, which was made worse by repetitive grasping and holding. (R. at 298.)

However, the ALJ discounted the reliability of these reports based upon her assessment that they were based upon Plaintiff's subjective complaints, were not based upon objective evidence,

and were otherwise insufficient. The ALJ noted that, although
Plaintiff has been diagnosed with RSD, "she only demonstrates
signs of mild swelling in her fingers episodically." (R. at
299.)  The ALJ added that Plaintiff has not received significant
treatment for her condition, and that the medication she takes is
of a mild sort. (R. at 300.)  Also, the ALJ stated that
"although the claimant complains of dry skin with cracking that
is so painful she cannot use her fingers, she has not sought
treatment specifically from a dermatologist." (R. at 300.)
Finally, the ALJ concluded that the only abnormality supported by
objective evidence was that Plaintiff's fingers were slightly
swollen. (R. at 298.)

However, the Court finds significant amounts of objective
medical evidence in the record, which was not addressed by the
ALJ, and that supports Plaintiff's otherwise subjective claims of
pain. In 1992, Dr. Barnett found "objectively" that Plaintiff
has restricted wrist motions, numbness in all fingers of both
hands, difficulty fully flexing her fingers, diminished sensation
in the palmar aspect of all fingers in the left hand, positive
Phalen sign bilaterally, positive Tinel sign on the left and
slightly positive on the right, weakness in both hands and
atrophy of the left forearm. (R. at 150.)  X-Rays examined by
Dr. Barnett show a small loose bone fragment at the base of the
1st metacarpal and arthritic sclerosis, osteophyte formation in

both thumbs, and arthritic sclerosis at the carpal articulations. (R. at 151.) The ALJ did not even mention Dr. Barnett's findings in her opinion.

Next, Dr. Kale observed that Plaintiff's fingers appeared slightly swollen and that she conducts finger motions slowly and carefully.[9] (R. at 158.) Dr. Kale stated his "best-fit diagnosis" as chronic RSD. (R. at 159.) While Dr. Kale did state that it was unclear to him why she should continue having such pain, he opined that she could not perform her current job, which required hand manipulation and strength. (R. at 159.) He also stated that her Tinel's test and Phalen's sign were positive on the left. (R. at 158.)

Dr. Artinian's report also supports Plaintiff's claim. Dr. Artinian observed synovial membrane thickening of both PIP joins, a deformity in her fingers in both hands, severe pain and stiffness in the left forearm and wrist, the inability to make a fist, a fungus in her fingernails for the last five years, and a skin disorder of both hands that causes a cracking of the skin and severe burning pain, for which he says nothing seems to help.

---

[9] The Commissioner argues that this is simply an observation made by Dr. Kale and not a limitation placed on Plaintiff's ability to use her fingers. While the Court cannot state Dr. Kale's intent in the statement, the statement was made as part of a medical physical examination and therefore, the Court reads Dr. Kale's statement about how she moves her fingers as a statement about her observed ability and not just writing out a complaint.

(R. at 162, 183, 203.)  Dr. Artinian also stated that Plaintiff
has been evaluated by multiple dermatologists, and that they have
no etiology and no way of treating it.  (R. at 183.)  Dr.
Artinian's observation that Plaintiff has sought treatment from
dermatologists directly contradicts the ALJ's finding that
Plaintiff's subjective claims are not credible because she has
not sought treatment from a dermatologist.  (R. at 183.)

Dr. Barnett stated that Plaintiff has a moderate loss of
both hands "on an industrial basis," Dr. Kale stated that
Plaintiff is not capable of work that requires hand manipulation
and strength, and Dr. Artinian stated that Plaintiff's hands are
useless for any gainful employment.  (R. at 151, 159, 394.)
These opinions contradict the ALJ's conclusion.  The ALJ cannot
substitute her judgment for the judgment of these doctors.  The
ALJ has not cited any medical evidence that contradicts the
opinions of these three doctors.  The ALJ must either obtain more
medical evidence to make a determination of Plaintiff's fingering
abilities or provide her reasoning for rejecting the medical
opinions in the record that favor Plaintiff.

## 2.  The ALJ did not fail to consider Plaintiff's obesity in combination with her other impairments.

Plaintiff argues that the ALJ failed to consider her
obesity in combination with her other impairments in determining
whether Plaintiff was disabled.  Plaintiff points out that she is
61 inches tall and weighs approximately 210 lbs.  Prior to the

second administrative hearing, the Commissioner issued a new regulation that specifically requires ALJs to consider the impact of obesity during an RFC assessment. *SSR 00-3p*. Plaintiff also cites to Seventh Circuit caselaw, which supports her argument that ALJs must consider obesity in combination with other impairments when making a disability determination. *Clifford*, 227 F.3d at 873 (An ALJ must consider the aggregate effect of a claimants obesity with her other impairments.)

While the Court does not disagree with the legal principles cited by Plaintiff in support of this argument in general, they are not applicable in this case. Because the Seventh Circuit affirmed this case on every issue except for the fingering issue, the legal principle of *res judicata* limits the Court to that issue. *Gulo*, 1999 WL 133084, at *5 ("The decision is AFFIRMED in all respects except as it relates to the repetitive fingering issue"). Because all issues except repetitive fingering were affirmed by the Seventh Circuit, the Court does not have the authority to revisit the issue.

## CONCLUSION

By not addressing evidence and testimony contrary to her decision, the ALJ failed to "build a logical bridge" between the evidence and her decision. *Clifford*, 227 F.3d at 872 ("Most importantly, [the ALJ] must build an accurate and logical bridge from the evidence to [her] conclusion."). The Court is unable to

determine whether the ALJ considered all of the evidence supporting Plaintiff's claims. Because the Court is unable to trace the ALJ's path of reasoning, this case must be remanded to the ALJ. On remand, the ALJ must either articulate her reasons for rejecting the concessions of VE Ghehrig and VE Mendrick, and for rejecting the entire opinion of VE Grzesik, or issue a decision consistent with these opinions.

**IT IS HEREBY ORDERED** that Defendant's Motion for Summary Judgment be, and the same hereby is, **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Summary Judgment be, and the same hereby, is **GRANTED IN PART, and DENIED IN PART.**

DATED: August 13, 2002      E  N  T  E  R:


_Arlander Keys_

ARLANDER KEYS
United States Magistrate Judge